IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANGELA DARTY, on her own behalf and on behalf of a class of those similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:25-cv-00534 |
| MARION COUNTY SHERIFF, in his official capacity, | ) ) ) ) | |
| | ) | COMPLAINT – CLASS ACTION |
| Defendant. | ) | |

## VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND INDIVIDUAL DAMAGES

**Introductory Statement**

1. Inmates of the Marion County Jail (formally known as the Adult Detention Center) ("the Jail"), which is operated by the Marion County Sheriff ("the Sheriff"), are prohibited from receiving books and other literature at the facility, regardless of the identity of the sender or the content of the publication. For a variety of reasons, the alternatives offered by the Sheriff do not afford inmates of the Jail meaningful access to literature on many topics of interest. Angela Darty is an inmate of the Jail who wishes to receive books pertaining to Buddhism, and perhaps other issues, but has been repeatedly informed that she may not receive these materials. The prohibition on inmate receipt of books violates the First Amendment to the United States Constitution. Prompt declaratory and injunctive relief should be awarded in

1

favor of Ms. Darty and a class of inmates of the Jail.  Ms. Darty is also entitled to her individual damages.

**Jurisdiction, Venue, and Cause of Action**

2.     The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.     Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

5.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6.     Angela Darty is an adult individual currently incarcerated in the Marion County Jail.

7.     The Marion County Sheriff is the duly elected sheriff of Marion County, Indiana, and is therefore responsible for overseeing the Marion County Jail.  He is sued in his official capacity.

**Class Action Allegations**

8.     This action is brought by Angela Darty on her own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

9.     The class is defined as follows:

> All persons currently confined, or who will in the future be confined, in the Marion County Adult Detention Center.

10.    All the requirements of Rule 23(a) are met in this cause in that:

    a.    The class is so numerous that joinder of all members is impractical. The website of the Marion County Sheriff indicates that the Marion County Adult Detention Center "houses an average daily population of nearly 2,500 inmates." *See* Marion Cnty. Sheriff, *Sheriff Kerry J. Forestal*, at https://www.indy.gov/agency/marion-county-sheriffs-office (last visited Mar. 21, 2025). Moreover, the membership of the proposed class is constantly changing as prisoners enter and leave the facility.

    b.    There are questions of law or fact common to the class: whether jail policies concerning inmate receipt of books violate the First Amendment to the United States Constitution.

    c.    The claims of the representative party are typical of those of the class.

    d.    The representative party will fairly and adequately protect the interests of the class.

11. The further requirements of Rule 23(b)(2) are met in this cause as at all times the defendant has acted or refused to act in a manner generally applicable to the class, thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

12. Undersigned counsel is an appropriate person to be appointed as counsel for the class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and should be so appointed.

**Factual Allegations**

13. The Marion County Jail (formally known as the Adult Detention Center) ("the Jail") houses thousands of pretrial detainees and convicted inmates in Indianapolis, Indiana.

14. Angela Darty is an inmate of the Jail. She has been incarcerated in the Jail since January of 2024.

15. Ms. Darty resides in what is colloquially known as the "program dorm" of the Jail. This is a housing unit for inmates who have exhibited good behavior. It is referenced as the "program dorm" because inmates on this unit are generally expected to enroll, and do enroll, in classes and other programming available at the Jail.

16. At any one time, there are approximately twenty to thirty-two inmates housed on Ms. Darty's unit.

17. The Jail makes electronic tablets available to inmates, which inmates may then use to play music or games, to read certain literature or the news, or for other purposes. Some uses of the tablet are free of charge while others are available only for purchase.

18. Each inmate may utilize the free uses of the tablet, without charge, for up to 119 minutes each day. After this, they are charged per minute even for the uses of the tablet that would otherwise be free.

19. However, inmates are not provided with individual tablets. Instead, each tablet must be shared between numerous inmates. In the program dorm where Ms. Darty is housed, each tablet is shared between four or five inmates.

20. Given the limited number of tablets available to inmates, possession and use of the tablets may become extremely competitive, and the use of these tablets may be monopolized by certain inmates.

21. The Jail advertises itself as a "paperless facility." As such, inmate mail other than legal mail is processed and scanned by a third party vendor, and the scanned mail is made available to inmates electronically via inmate tablets. And, given that

it considers itself to be a "paperless facility," inmates at the Jail are not permitted to receive physical copies of books or other forms of literature—from any source.

22. The following is from the website of the Marion County Sheriff's Office:

> We will no longer accept any books or physical publications. Inmates will be able to purchase digital books, periodicals, and magazines via tablet or kiosk.

*See* Marion Cnty. Sheriff, *Send Mail to a Person in Jail*, at https://www.indy.gov/activity/send-mail-to-a-person-in-jail (last visited Mar. 21, 2025). Electronic kiosks are located on each housing unit at the Jail and are utilized by inmates on that unit to perform certain activities, but they are centrally located and must be shared amongst numerous inmates.

23. Many inmates desire to obtain and possess books and other reading material while incarcerated at the Jail. Being able to access books offers inmates a chance to learn, to explore their interests, to reflect upon their own lives, and to connect with society to some extent. It also enables inmates to pass the time while incarcerated when there are often few other activities that will serve to occupy their minds and, for some inmates, assists in improving their vocabulary and literacy skills.

24. While, as noted, inmates may access books and other literature through their tablets, for three reasons this is not an adequate alternative to the ability to receive physical materials:

  a. First, because inmate tablets do not have internet access, the materials available on those tablets—whether offered for free or for purchase—must be specifically uploaded to the tablet by persons other than inmates. This means that an inmate's desired reading material may not even be available on the tablet.

    b. Second, as noted, each tablet must be shared amongst several inmates. Therefore, an inmate simply may not be able to utilize the tablet when he or she desires to read. This is particularly likely during the evening hours when inmates are not engaged in programming or jobs at the Jail.

    c. And third, inmates may only use the tablet for 119 minutes each day without incurring per-minute charges. Inmate tablets at the Jail are used for a wide variety of purposes—including reading mail from friends or family members, submitting grievances to staff at the Jail and corresponding with facility officials about those grievances, placing monitored phone calls to friends or family members, and purchasing commissary—and much of this time is often spent engaging in activities other than reading books or other literature.

25. Although the Jail advertises itself as a "paperless facility," in reality inmates do have access to actual papers. Many inmates, for instance, are in possession of legal mail or other documents pertaining to their criminal cases. Inmates may also possess notebook paper to write to friends or family members (or their lawyers), or simply to take notes, draw, or journal. And many inmates maintain in their possession a physical Bible.

26. At least on the "program dorm" on which Ms. Darty is housed, inmates also have access to a small collection of physical books other than the Bible that have been donated to (and are owned by) the Jail. It is Ms. Darty's understanding that these books have been donated to the Jail by a church or another religious organization, and nearly all of the books are Christian themed.

27. Ms. Darty is an avid reader and enjoys consuming books. She is particularly interested in books pertaining to Buddhism as, even though she is not a Buddhist, she has attempted (and is attempting) to utilize her time in the Jail to explore her own beliefs and is extremely interested in this religion.

28. Inmate tablets at the Jail contain a small number of books pertaining to

Buddhism. Ms. Darty finished reading these books long ago, however. She therefore inquired of Jail staff as to whether additional books pertaining to Buddhism could be uploaded to inmate tablets. She was informed, however, that this was not possible.

29. After receiving this information, and in light of her understanding that physical books available on the "program dorm" had been donated to the Jail by a church or another religious organization, Ms. Darty wrote to the Indiana Buddhist Center—a nonprofit organization that, according to its website, "serves as a place of teaching, practice, mediation and friendship for Indiana Buddhists and those who are interested in learning about the Dharma"—to inquire as to whether that organization would be willing to send literature to her.

30. The Indiana Buddhist Center graciously responded by mailing to Ms. Darty at the Jail a collection of literature pertaining to Buddhism. In light of the Jail's prohibition on inmate receipt of books and other literature, however, these materials were never provided to Ms. Darty. Instead, they were simply marked "return to sender" and were sent back to the Indiana Buddhist Center.

31. Ms. Darty would like the ability to receive books and other literature at the Jail, whether sent to her by the Indiana Buddhist Center or ordered for her by friends or family members through established book publishers or distributors such as Amazon or Barnes & Noble. For all the reasons above, the current options available at the Jail are not adequate and do not present Ms. Darty with a meaningful opportunity to access literature that interests her.

32. Allowing inmates to receive books, at least from certain senders, is consistent

with the policy of the Indiana Department of Correction as well as numerous other correctional institutions.

33. The Jail's failure to allow books to be sent to inmates is not rationally connected to a legitimate penological interest. Allowing inmates to receive books will not pose any deleterious consequences to the operations, staff, or inmates of the Jail. And there are no readily available alternatives for inmates to exercise their First Amendment rights.

34. Ms. Darty has filed multiple grievances concerning her inability to access literature.

35. In response to one grievance in which Ms. Darty sought access to a specific book pertaining to Buddhism, staff at the Jail informed her simply that she "might need to check the tablet" even though the book was not available on inmate tablets.

36. Ms. Darty filed another grievance after the literature sent to her by the Indiana Buddhist Center was returned to that organization. In response to this grievance, staff at the Jail informed her vaguely that "it's not that we don't want you to have anything, but we can only do what we can at this time." She was then informed that "no one would be able to get any publication sent in here of any kind, and the books that did come for you were sent back to the author because of our policy."

37. Ms. Darty has properly exhausted the grievance system available to her at the Jail.

38. As a result of the Jail's prohibition on inmate receipt of books, Ms. Darty has

suffered damages.

39. At all times, the Marion County Sheriff has acted or refused to act under color of state law.

40. As a result of the actions or inactions of the Marion County Sheriff, Ms. Darty and the members of the putative class are suffering irreparable harm for which there is no adequate remedy at law.

**Legal Claim**

41. The Jail's prohibition on inmate receipt of books violates the First Amendment to the United States Constitution.

**Request for Relief**

**WHEREFORE,** the plaintiff respectfully requests that this Court do the following:

 a. Accept jurisdiction of this cause and set it for hearing.

 b. Certify this cause as a class action with the class as defined above.

 c. Declare that the defendant has violated the rights of the plaintiff and the class for the reason(s) described above.

 d. Issue a preliminary injunction, later to be made permanent, enjoining the defendant to permit inmates to receive books and other literature at the Jail.

 e. Award the plaintiff her individual damages, including nominal damages.

 f. Award the plaintiff her costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

 g. Award all other proper relief.

Gavin M. Rose
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
grose@aclu-in.org

*Attorney for the plaintiff and the putative class*

## VERIFICATION

I hereby verify, under penalties for perjury, that the foregoing factual statements are true and correct to the best of my information and belief.

3-10-25
Date

Angela Darty, Plaintiff